2008 OK CIV APP 6

**DISCOVER BANK (Discover Card) by S.A. Discover Fin. Serv. LLC, Plaintiff/Appellee,**

v.

**Rae S. WORSHAM, Defendant/Appellant.**

**No. 104,270.**

Court of Civil Appeals of Oklahoma, Division No. 4.

July 19, 2007.

Rehearing Denied Nov. 5, 2007.

Certiorari Denied Jan. 14, 2008.

Richard Winblad, Edmond, OK, for Plaintiff/Appellee.

Bill V. Wilkinson, Wilkinson Law Firm, Tulsa, OK, for Defendant/Appellant.

JERRY L. GOODMAN, Judge.

¶1 Cardholder Rae S. Worsham appeals the trial court's January 3, 2007, order granting summary judgment to Discover Bank (Discover) on its action to collect the balance owed it by Cardholder after Cardholder's default on her agreement to pay. The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(2), 12 O.S.2001 and Supp.2003, ch. 15, app. 1. Based upon our review of the facts and applicable law, we affirm in part and reverse in part.

## FACTS

¶2 Cardholder's now-deceased husband entered into an agreement with Discover on April 22, 1993, wherein Discover agreed to extend unsecured credit to him in exchange for a promise to repay the borrowed money with interest in accordance with Discover's "cardmember" agreement. The record suggests that Cardholder was an authorized user of the credit card, which was probably maintained as a joint account.[1] Both Cardholder and her husband used the card prior to his death.

¶3 Upon Cardholder's husband's death on May 29, 1998, the balance owed on the account was $3,665.58. Discover's cardmember agreement states it does not terminate upon the death of the original cardholder. Discover did not declare the agreement to be in default upon the death of the husband and did not file a creditor's claim against his estate.

¶4 Cardholder continued to use the credit card for four years following her husband's death. She made payments on the card until financial difficulties resulted in her failure to make further payments. Her last payment was made in August 2002. Discover declared the account in default. At the time of the default, the balance was $8,823.48, a balance increase of over $5,000.00 since the date of husband's death. Cardholder paid a total of $7,923.42 to Discover, which according to the record, would have paid off all the charges incurred on the card as of Cardholder's husband's death. However, additional charges, interest, and fees after his death totaled more than $12,799.48, leaving a balance due of $8,823.48.

¶5 Discover filed suit against Cardholder on March 11, 2005, seeking the balance due, interest, and an attorney's fee. After denying the allegations, discovery began. After discovery was completed,[2] Discover filed a motion for summary judgment on May 26, 2006.[3] The trial court found there were no disputed issues of material fact and Discover was entitled to judgment as a matter of law. Cardholder appeals.

## STANDARD OF REVIEW

¶6 A summary judgment disposes solely of issues of law and, therefore, it is reviewable

---

1. The record presented is unclear as to the exact nature of the credit account. Discover's motion for summary judgment, but not its petition, alleges it to be a joint account; yet elsewhere it refers to Cardholder as an authorized user on her late husband's account. The cardmember agreement makes continual reference to a joint account. However, the nature of this account is irrelevant under the facts of this case and our resolution of the legal issue presented.

2. Cardholder contends discovery was not completed prior to the trial court's grant of judgment against her. We address this issue later in the opinion.

3. The motion went unopposed and was granted by default. This was later vacated because Cardholder had not received a copy of the motion. The motion was reasserted and Cardholder filed a response. After the trial court granted Discover's motion the second time, Cardholder appealed.

by a de novo standard. *Manley v. Brown*, 1999 OK 79, 989 P.2d 448; *Neil Acquisition, LLC v. Wingrod Inv. Corp.*, 1996 OK 125, 932 P.2d 1100. In a de novo review, we have plenary, independent, and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, 859 P.2d 1081.

## ANALYSIS

¶ 7 Cardholder contends disputed issues of material fact exist which preclude summary judgment. Cardholder posed four defenses to Discover's motion: 1) that she had paid the debt owed; 2) she was not a party to the contract between Discover and her late husband; 3) Discover has abandoned the indebtedness, and 4) Discover failed to file a creditor's claim in her late husband's estate. We address each below.

### A. Debt Paid

■ ¶ 8 Cardholder claims she paid Discover "$3,606.80, more to the Plaintiff than I have personally charged." True as this may be, the evidence reflects that Cardholder has carried a monthly principal balance on this account to which was added over-limit—and late fees plus nineteen percent interest on the remaining monthly balance, which resulted in the stated balance due at the time of default. Discover showed, and the trial court found, the balance due as stated was correct. This was the amount of the judgment entered by the trial court which is supported by this record. This is not a basis to reverse the trial court's judgment.

### B. Debt Forgiven

■ ¶ 9 Cardholder also claims that Discover had forgiven the debt, as evidenced by a notation on Cardholder's August 30, 2002, statement which reads: "Internal charge off" of $8,823.48 resulting in a zero balance. We disagree. This notation reflects Discover's accounting procedure for removing the account from active status. It is not the legal equivalent of forgiving a debt. There is no evidence Discover intended to make a gift of forbearance of the debt to Cardholder, nor is

there any evidence the debt was forgiven in exchange for any consideration by Cardholder. The trial court correctly found the debt was not forgiven.

### C. Cardholder Not a Party to the Contract.

#### 1. Cardmember Agreement

■ ¶ 10 Cardholder next argues that the contractual agreement to repay the money owed to Discover was between Discover and her late husband; she is not a party and is not obligated to repay. Her affidavit "den[ies] any agency relationship between us regarding this cardmember agreement." She contends the agreement was not made for her benefit and she was unaware of it. Finally, she argues that since the cardmember agreement between her late husband and Discover was not produced, she is entitled to judgment.

¶ 11 We disagree. The cardmember agreement is part of the record. Its terms include the following:

> The use of your Account or a Card by you or an Authorized User, or your failure to cancel your Account within 30 days after receiving a Card, means you accept this Agreement. . . .

> You agree to pay us . . . for all purchases, cash advances and balance transfers including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or a Card. . . .

> If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account. . . .

¶ 12 These terms are clear. Both Cardholder and her late husband were jointly and severally liable for all charges made. This would be true whether Cardholder was a surviving joint account holder or an authorized user under her late husband's individual account. The fact she continued to use the card following her husband's death constitutes a new obligation, as set out below. Further, there is no evidence that Cardholder disputed any of the charges made, object-

ed to the terms of the cardmember agreement, or notified Discover she would no longer be bound by its terms upon the death of her husband. All of these facts support the trial court's judgment.

### 2. Account Stated

■ ¶ 13 However, assuming arguendo that the cardmember agreement does not support Discover's position (*i.e.* it is a joint account), the evidentiary material clearly shows that Cardholder was liable for the charges she made under the theory of recovery known as "account stated." This was defined in *Williams v. Casparis Bros.*, 1925 OK 547, ¶ 0, 238 P. 438, 438 as:

> An account stated is an *agreement, expressed or implied,* between parties who have had previous transactions with each other, fixing and determining the amount due from one to the other on account, and when such agreement is made, such *"account stated" becomes a new obligation, and takes the place of the one upon the prior account.*

(Emphasis added; syllabus by the Court.)

¶ 14 The Oklahoma Supreme Court in *Webster Drilling Co. v. Sterling Oil of Okl., Inc.,* 1962 OK 242, 376 P.2d 236, stated:

> An account stated is an agreement, express or implied. The amount or balance so agreed upon constitutes a new and independent cause of action, superseding and merging the antecedent causes of action represented by the particular constituent items. 1 Am.Jur. Accounts and Accounting, § 16. An account stated is a new obligation, taking the place of the obligation upon the prior account. *Heenan v. Davis,* 182 Okl. 237, 77 P.2d 78.

*Id.* at ¶ 8, 376 P.2d at 238.

¶ 15 In *State ex rel. State Ins. Fund v. Accord Human Resources, Inc.,* 2003 OK 109, 82 P.3d 1015, the Court held:

> The appellate court concluded that the negotiations and subsequent agreement of the parties changed the nature of the obligation into an account stated. The phrase "account stated" refers to a type of contract where an agreement on a balance owed becomes a new and independent obligation that supercedes and merges the prior contractual obligation. *Great Plains,* 2003 OK 79, ¶ 11, 78 P.3d at 88, *quoting, Webster Drilling Co. v. Sterling Oil of Oklahoma, Inc.* 1962 OK 242, 376 P.2d 236, 238.

*Id.* at ¶ 8, 82 P.3d at 1017–18.

¶ 16 Finally, in *State ex rel. State Insurance Fund v. Great Plains Care Center, Inc.,* 2003 OK 79, 78 P.3d 83, the Oklahoma Supreme Court held:

> Historically, both an open account and an account stated were obligations that were enforceable *ex contractu* although both lacked an express agreement on a particular term required for the existence of a contractual obligation. Courts came to refer to missing terms of a contract, as well as the contract itself, as being implied. Thus, one difference between the historical ancestors of the modern open account and account stated on one hand, and the express contract on the other, was the source of the obligation being enforced, i.e., implied versus express promises.

*Id.* at ¶ 7, 78 P.3d at 87–8.

¶ 17 It is clear from the undisputed facts of this case that even assuming Cardmember was not a party to the cardmember agreement as she alleges, she remains bound to repay the debts she incurred to Discover under the theory of account stated because of her continued use of the credit card for almost four years after the death her husband. Cardmember continued to pay at least the minimum amounts due under the agreement, as presented to her each month in the statement of charges. She incurred the debt in accordance with the terms of the original agreement, made payments in accordance with those terms, incurred and did not dispute the interest and penalty charges assessed in conformity therewith, and generally used the card for four years until the day she decided that "I just didn't feel like I needed to pay...."

¶ 18 Clearly, Cardmember is liable for her debts under these facts. The trial court correctly granted judgment to Discover.

**370**

### D. Claims Against Estate

¶ 19 Cardholder claims judgment against her was erroneous because the claim was not presented against her husband's estate. There is no merit to this proposition of error for the reason that the debt sought to be collected was incurred by Cardholder, and not by her late husband. There was no need to pursue a claim against the late husband and no need to first present the claim to the estate for payment.

### TRIAL–RELATED ATTORNEY'S FEE AND COSTS

 ¶ 20 The trial court awarded Discover an attorney's fee of $2,000.00 and its costs.[4] This was apparently done without any evidentiary hearing. Our review of the appellate record presented does not reveal either the statutory or contractual authority upon which Discover relied in support of its quest for an attorney's fee. The trial court's award of such a fee appears to be sua sponte. This was erroneous as a matter of law. Unless authorized by statute or contract, a prevailing party is not authorized to a fee award. This portion of the trial court's order is vacated. Discover, as the prevailing party, is free to resubmit its fee request upon proper authority. The trial court shall then conduct a hearing to determine the appropriate amount of those fees, if any, pursuant to the guidelines set out in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.

¶ 21 The award of costs is affirmed.

### CONCLUSION

¶ 22 We hold the trial court correctly granted summary judgment to Discover as a matter of law for the debt incurred by Cardholder. We reverse the award of an attorney's fee because it does not appear from the record upon what basis the trial court granted the fee and because no *Burk* hearing was conducted.

4. Discover sent Garnishment Affidavits to various financial institutions in which Cardholder

¶ 23 AFFIRMED IN PART, REVERSED IN PART.

GABBARD, P.J., and REIF, J., concur.

had accounts, seeking $2,150.00 in an attorney's fee and $1,010.00 in costs.